UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Bankruptcy No. 11-B-84241** |
| **MICHAEL A. TURNER and** | ) | |
| **SHARON L. TURNER** | ) | **Chapter 13** |
| | ) | |
| Debtors. | ) | **Judge Lynch** |
| | ) | |

## <u>MEMORANDUM OPINION</u>

The Debtors seek to hold CitiMortgage, Inc. in civil contempt for violating their discharge and the terms of their confirmed and completed Chapter 13 plan when the creditor re-recorded an improperly recorded pre-petition mortgage in the correct county and commenced a state court complaint to foreclose on that mortgage. For the reasons set forth below, the Debtors' Petition For Rule To Show Cause Against CitiMortgage For Violation of 11 U.S.C. § 524 And For Other Relief (ECF No. 77) is DENIED.

## I. <u>JURISDICTION</u>

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. The Debtors seek to interpret and enforce the discharge issued by this Court and the confirmation order entered by this Court confirming the Debtors' Chapter 13 Plan, including resolving issues as to the extent of the discharge and the validity of liens and claims treated by the plan. Adjudication is therefore a matter arising under the Bankruptcy Code, a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (I), (K), (L) and (O), and as such this Court has constitutional and jurisdictional authority to enter a final order. Although the bankruptcy case closed after the Debtors completed their Chapter 13 Plan and the Chapter 13 Trustee filed a final report, the Court "has continuing authority

to enforce its orders after a case has been closed." *In re Rockford Prods. Corp.*, 741 F.3d 730, 732 (7th Cir. 2013) (citing *Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009)).  The power of a bankruptcy court to enforce its own injunctions through civil contempt includes enforcement of the discharge injunction. *Cox v. Zale Del., Inc.*, 239 F.3d 910, 917 (7th Cir. 2001).

## II. <u>FINDINGS OF FACT AND PROCEDURAL BACKGROUND</u>

In considering the Motion for Rule to Show Cause, this Court has considered the evidence and the argument presented by the parties at trial and in their pleadings.  Based on the record before it the Court makes the following findings of fact.[1]

The Debtors and Sharon's father, Harry Semrow, purchased the Debtors' current residence at 3300 W. Bretons Drive, McHenry, Illinois, on August 31, 2001.  A deed showing the three purchasers holding the property as joint tenants was filed with the McHenry County Recorder's office.  The purchase price was in part funded by a loan from ABN AMRO.  To secure that loan the Debtors and Mr. Semrow granted a mortgage to ABN AMRO, which also was properly recorded.  On May 1, 2006, the Debtors paid off the ABN AMRO loan using proceeds from a new $200,000 refinancing loan from Oak Street Mortgage LLC, secured by a mortgage in the Debtors' interest in the Bretons Drive residence.[2]  However, the Oak Street mortgage was incorrectly recorded in Cook County on May 18, 2006, rather than in McHenry County where the property is located.  ABN AMRO signed a release of its mortgage, which was recorded with the McHenry County Recorder on June 5, 2006.  In addition to paying off the ABN AMRO loan for $138,603.71, the Debtors used the proceeds from the Oak Street refinancing loan to pay off approximately $20,000 in credit card and other debts and received the

---

[1] To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any of the conclusions of law constitute findings of fact, they are adopted as such.

[2] Mr. Semrow did not sign the mortgage granted to Oak Street and was not listed as a "Borrower" in the mortgage documents. (Debtor's Ex. 7.)

approximately $25,000 remaining in cash.  CitiMortgage later succeeded to Oak Street's interest in the refinancing loan and mortgage.

The Debtors filed their voluntary Chapter 13 petition on September 29, 2011.  They scheduled CitiMortgage as a creditor in their initial filings, but listed its claim as unsecured.  The Debtors listed a debt to "Beneficial" of $33,635 as the only claim secured by an interest in their residence.  HSBC Mortgage Services, Inc. filed a proof of claim on February 24, 2012 as servicer on behalf of Beneficial Financial I Inc., successor by merger to Beneficial Illinois Inc., asserting a secured claim of $33,541.98. (Claim No. 20-1.)  HSBC / Beneficial's proof of claim attached a copy of a mortgage in the Debtors' interest in their residence that was dated December 26, 2007.  That mortgage indicated that it was recorded with the McHenry County Recorder on January 9, 2008.  No one objected to HSBC / Beneficial's proof of claim.

The Debtors listed CitiMortgage, Inc. as the holder of a general unsecured claim in their Schedule F. The Turners described the CitiMortgage claim to involve an unliquidated, contingent debt of $183,844 for an "Unrecorded Loan 5/18/06" in connection with their residence.  Notice of the bankruptcy and the meeting of creditors was sent to CitiMortgage by the Bankruptcy Noticing Center by electronic transmission on October 1, 2011. (BNC Certificate of Service, ECF No. 9 (showing a service date of October 2, 2011)).[3]  In a January 25, 2012 letter from CitiMortgage to the Debtors, CitiMortgage acknowledged that there had been a "chapter 13 bankruptcy filed on September 29, 2011." (Debtor's Ex. 1.1.)  The letter proposed the modification of the Debtors' loan to CitiMortgage,

---

[3] The Bankruptcy Rules permit notice by the clerk to "be sent by a specified type of electronic transmission" if "the entity entitled to receive the notice requests [such electronic service] in writing." Fed. R. Bankr. P. 9036.  Although the record is not clear as to when or how CitiMortgage requested electronic service, CitiMortgage has not suggested that it did not receive notices sent electronically by the Bankruptcy Noticing Center or that it did not consent to electronic service.

but also noted that because of the pending bankruptcy case the Debtors would "be required to obtain court approval prior to the application of this modification to your account."

CitiMortgage never filed a proof of claim in the case. It did not object to the Debtors' initial proposed Chapter 13 plan, filed September 30, 2011 (ECF No. 10) which was noticed to creditors by the Bankruptcy Noticing Center on October 2, 2011 (ECF No. 11) or to the first amended proposed plan filed January 16, 2012 (ECF No. 21) and noticed to creditors on January 19, 2012. (ECF No. 28.) Nor did CitiMortgage object to the Debtors' second amended proposed Chapter 13 plan filed on February 15, 2012 (ECF No. 34) and noticed to creditors via the Bankruptcy Noticing Center on February 18. (ECF No. 39.)

On March 30, 2012, the Court confirmed the Debtors' second amended Chapter 13 plan. (ECF No. 41.) The Debtors used the Northern District of Illinois' model Chapter 13 plan as the template for their second amended plan. The Turners' plan, as modified by the confirmation order, provides for the Debtors to make sixty monthly payments increasing in steps from $1,620 to $2,816.43 until all allowed claims are paid in full. Section C of the confirmed plan identifies the pre-petition claims that the Debtors are to pay directly: "Beneficial" at $454.00 per month, and two other secured claims, each of which were scheduled as secured by the Debtors' 401(k) retirement plans. CitiMortgage is not mentioned by name in Section C or under Section E's provisions for payment of secured claims through disbursements by the Chapter 13 Trustee, or anywhere in the confirmed plan.

Adopting the standard terms of the model plan, Section B.3 of the confirmed plan states:

> The holder of any claim secured by a lien on property of the estate, other than a mortgage treated in Section C or in Paragraph 2 of Section E, shall retain the lien until the earlier of (a) payment of the underlying debt determined under nonbankruptcy law, or (b) discharge under 11 U.S.C. § 1328, **at which time the lien shall terminate and be released by the creditor.**

(ECF No. 34 (emphasis added).) Section G of the confirmed plan, the section of the model plan which indicates any special terms modifying the model plan, states that "[n]o payment shall be made on any

unsecured claim that is not timely filed." (*Id.*)  Finally, the confirmation order entered on March 20, 2012, provides in pertinent part that "[a]ll property of the estate, as specified by 11 U.S.C. §§ 541 and 1306, will continue to be property of the estate following confirmation, unless (1) the plan provides for surrender of the property, or (2) the property is sold pursuant to the plan or court order." (Order Confirming Plan, ECF No. 41.)

Because CitiMortgage and several other creditors either did not file claims or had their claims disallowed, the Debtors were able to complete their plan sooner than expected, in 15 months, paying a total of $24,729.23 into the plan through the Chapter 13 Trustee.  On January 29, 2013, the Chapter 13 Trustee filed a notice of completion of plan payments and the discharge order was entered on February 5, 2013. (ECF No. 99.)  CitiMortgage has stipulated that it received a copy of the discharge order.

The Chapter 13 Trustee filed her final report on April 4, 2013, showing that she had distributed $23,495.15, the full amount of allowed general unsecured claims, to general unsecured creditors.  She also reported distributing $1,234.08 in administrative expenses. (Chapter 13 Final Report & Account, ECF No. 74.)  While the Debtors indicated in their initial bankruptcy schedules that CitiMortgage held a $183,844.00 unsecured claim, the final report noted that its claim was not allowed because it had not been timely asserted by the creditor.  CitiMortgage never objected to the final report, nor has it ever sought to vacate or modify the confirmation order or the plan.  The case closed and the Chapter 13 Trustee was discharged on April 5, 2013.

On August 29, 2013, CitiMortgage, through its attorneys at Codilis & Associates, sent a demand letter by U.S. Mail to the Debtors threatening to institute foreclosure proceedings against the Bretons Drive property under the 2006 mortgage.  The letter states that the attorneys are "attempting to collect the debt that you owe the present creditor," identifying the "name of the creditor to whom the debt is owed [as] CitiMortgage, Inc." (*Id.*)  It further asserts that as "of the date of this letter, you owe

$216,073.09" and that "Federal law gives you thirty (30) days after you receive this letter to dispute the validity of the debt or any part of it [or] our firm will assume that it is valid." The August demand letter made no reference to the Debtors' discharge. Nor did it suggest that the law firm was not attempting to collect the debt as a personal liability of the Debtors.

The Debtors' attorney responded to the demand letter on February 5, 2014 by asserting that the Debtors had received a bankruptcy discharge. (Debtors' Ex. 6.) The letter went on to state that CitiMortgage, Inc. had been properly scheduled and notified of the bankruptcy case, and alleged that CitiMortgage was violating the discharge injunction by attempting to collect a discharged debt. The letter closed by asserting that the Debtors "dispute the validity of your ability to foreclose on" the Debtors' residence because no "mortgage had been properly perfected against the [residence] prior to the filing of the Chapter 13 Petition."

On December 11, 2013, First American Title Insurance Company, which had apparently issued a title insurance policy in favor of CitiMortgage or its predecessor, re-recorded the May 2006 mortgage. Ms. Amy Belair, claims counsel for First American Title, later testified that she prepared and filed the recording document with the McHenry County Recorder. She further testified that she had personal knowledge of the Debtors' file, and acknowledged that the Turners had received a Chapter 13 discharge at the time she recorded the mortgage. Ms. Belair indicated that she had consulted with other attorneys in her office prior to re-recording, and that she caused the mortgage to be re-recorded because it had been improperly recorded initially. She explained that the title company was concerned that without further action the mortgage could lose priority, potentially giving rise to a claim under the title insurance policy. Explaining further, she stated that from her review of several cases before recording the mortgage, she concluded that a mortgage lien is not destroyed by a bankruptcy discharge. Finally, she testified that it was common practice for a title company to file a mortgage as an agent on behalf of the insured lender.

Later that year, the Codilis firm together with another law office, Andrew Szocka, PC, filed a complaint on behalf of CitiMortgage against the Debtors, Harry Semrow and Beneficial Financial I Inc. to foreclose the May 2006 mortgage on the Debtors' residence. The complaint sought to foreclose the mortgage or, to the extent the mortgage was ineffective, to impose an equitable lien or mortgage and to foreclose.[4] Although the complaint did not mention the Debtors' Chapter 13 bankruptcy case or their discharge, the complaint stated that none of the defendants were "claimed to be personally liable for deficiency." (Debtors' Ex. 8.)

The Debtors moved to reopen their bankruptcy case to present their motion for entry of a rule to show cause against CitiMortgage. The case was reopened, the matter briefed and an evidentiary hearing was conducted at which the Debtor Sharon Turner, the claims counsel for First American Title, and the assistant vice president of bankruptcy for CitiMortgage, all testified.

## III. DISCUSSION

As an initial matter, although the acts that the Debtors contend violated the discharge or plan were committed by a number of parties, including lawyers at Codilis & Associates and Andrew Szocka, PC, and employees of First American Title Insurance Company, the Debtors only bring their motion for rule to show cause against CitiMortgage. CitiMortgage does not contest that it is the proper party or that the attorneys and the title company were acting with its knowledge as its agents and within the scope of such agency.

### A. Although Unperfected, CitiMortgage Had a Lien Under Illinois Law

"Property interests are created and defined by state law." *Butner v. U.S.*, 440 U.S. 48, 55 (1979). The Debtors' residence is located in Illinois, and the CitiMortgage mortgage states that the instrument "shall be governed by federal law and the law of the jurisdiction in which the Property is located."

---

[4] The complaint also sought a judgment of $133,603.71 against Mr. Semrow for "unjust enrichment" because the ABN AMRO mortgage was released but he did not sign the mortgage to CitiMortgage's predecessor.

These facts are not in dispute and, therefore, Illinois law applies in determining the nature of CitiMortgage's interest in the property at least as of the petition date. *See, e.g., id* (unless Bankruptcy law or another federal interest requires a different result the property interest should be analyzed under state law).

The Debtors first argue that because the mortgage in favor of CitiMortgage was recorded in the wrong county CitiMortgage had no lien at all. Illinois law does not support that argument.

The Illinois Conveyances Act states that:

> All deeds, mortgages and other instruments of writing which are authorized to be recorded, shall take effect and be in force from and after the time of filing the same for record, and not before, *as to all creditors and subsequent purchasers, without notice*; and all such deeds and title papers shall be adjudged void *as to all such creditors and subsequent purchasers, without notice*, until the same shall be filed for record.

765 ILL. COMP. STAT. 5/30 (emphasis added). While the statute is clear that a mortgage must be recorded to be effective against creditors and purchasers without notice, it is equally clear that it *is* effective against those with notice. Most notably, an unrecorded mortgage is valid as between the mortgagor and mortgagee—the mortgagor being neither a creditor nor a subsequent purchaser. *Harms v. Sprague*, 105 Ill. 2d 215, 224–25 (Ill. 1984).[5]

The Debtors cite *In re Arnold*, a recent decision resolving an objection to claim and objection to confirmation for the proposition that an unrecorded mortgage does not create a lien in Illinois. 483

---

[5] Because the Court finds that as of the petition date CitiMortgage had an *actual* but unperfected mortgage lien in the property, the Court need not address CitiMortgage's alternative argument that it held an "equitable mortgage." In Illinois, an "equitable mortgage arises in a situation where money is loaned or credit given in reliance upon the security of property of the debtor, but pledged by him in such manner as not to be enforceable as a mortgage at law." *Wilkinson v. Johnson*, 194 N.E.2d 328, 332 (Ill. 1963). The Illinois Supreme Court gave as an example "conveyances, absolute in form, made in fact to secure a loan but unenforceable as a mortgage at law because of the absence of a defeasance clause." *Id.* CitiMortgage need not rely on the doctrine of equitable mortgage, however, because it had an *actual mortgage*—albeit an unperfected one. The mortgage was enforceable, just not against creditors and subsequent purchasers without notice. CitiMortgage would fare no better under an equitable mortgage theory, however. An unrecorded equitable mortgage is no more enforceable against a creditor or subsequent purchaser without notice than an unrecorded *actual* mortgage. *See, e.g., In re Cutty's-Gurnee, Inc.*, 133 B.R. 934 (Bankr. N.D. Ill. 1991) ("under the principles of equity, a party with notice of any existing equitable interest, claim or right in the same property is liable in equity to the same extent and in the same manner as the person from whom he made the purchase.") (citing *Rohde v. Rohn*, 83 N.E. 465 (Ill. 1908)).

B.R. 515 (Bankr. N.D. Ill. 2012).  To be sure, several sentences in *Arnold* state that "a lien is created upon recording of the mortgage" or that "a lien on real estate does not even arise until the mortgage has been recorded." 483 B.R. at 519, 521.  But ultimately, the decision in *Arnold* turned not on whether an unrecorded mortgage creates a lien under Illinois law, but rather how such rights should be treated under Section 1322(b)(2) of the Bankruptcy Code.  The opinion begins by noting that the "issue in this case is whether an unrecorded Illinois mortgage is 'a claim secured only by a security interest in real property that is the debtor's principal residence' for purposes of 11 U.S.C. § 1322(b)(2), which prohibits a Chapter 13 plan from modifying the rights of a holder of such a claim." *Id.* at 516.  When the statements in *Arnold* cited by the Debtors is read in context, it becomes clear that the *Arnold* decision means "lien" only in the sense of a "fully effective lien" or a "lien that is effective against creditors and subsequent purchasers without notice."  Indeed, *Arnold* quotes in full the language of 765 ILL. COMP. STAT. 5/30—including its critical qualifying language "*as to all creditors and subsequent purchasers, without notice,*" together with the Illinois Supreme Court's decision *Hass v. Sternbach* stating, "*[n]o one will contend that the recording of a mortgage is, in this state, necessary to its validity. Recording such instruments serves but one purpose, and that is to make them valid as against creditors and subsequent purchasers without notice.*" 41 N.E. 51, 54 (Ill. 1894) (emphasis added).  Judge Cassling then emphasized that his decision "has no quarrel with the observations that the Supreme Court made in *Haas* regarding the validity of an unrecorded mortgage against both the mortgagor and subsequent creditors with actual notice of its existence." *Arnold*, 483 B.R. at 522.

The court in *Arnold* sustained the debtor's objection to the creditor's proof of claim and overruled the creditor's objection to confirmation pursuant to Section 1322(b)(2).  While *Arnold* suggests that the rights of the holder of an unperfected mortgage in Illinois are so limited that for purposes of Section 1322(b)(2) the holder does not constitute a "holder[] of secured claims," that interpretation has no bearing here.  As discussed below, the confirmed plan in this case did not modify the rights of

CitiMortgage.[6] In any event, *Arnold* does not stand for the proposition that an unrecorded mortgage does not create a lien in Illinois.

The Debtor also cites a decision of the Illinois appellate court, *Farmers State Bank v. Neese*, 665 N.E.2d 534, 538 (Ill. App. Ct. 1996), a case also discussed in *Arnold*. The court in that case concluded that under the Illinois Mortgage Foreclosure Law, "a mortgage is a lien only from the time [it] is recorded" to find that a creditor bank "did not even have a lien at the time the IRS filed notice." *Farmers State Bank v. Neese*, 665 N.E.2d 534, 538 (Ill. App. Ct. 1996) (quoting 735 ILL. COMP. STAT. 5/15-1301). However, *Neese* dealt primarily with the priority of a tax lien under the Federal Tax Lien Act, 26 U.S.C. § 6322, and, therefore, analyzed the issue primarily under federal rather than state law. 665 N.E.2d at 537 ("Federal law controls in determining the priority of IRS liens."). The issue before the appellate court was not whether the mortgage[7] created a "lien" under Illinois law, but whether the mortgage created a lien that defeated a tax lien under federal law, displacing the claim of the Internal Revenue Service. Further, the court makes its statement that the bank did not "have a lien" in discussing the Illinois Mortgage Foreclosure Law and not the Illinois Conveyances Act. When later discussing the Illinois Conveyances Act in its decision, the *Neese* court states that "[a]s a mortgage, the bank's interest was void *as to all creditors and subsequent purchasers without notice until it [was] recorded in June 1992.*" 665 N.E.2d at 538 (emphasis added).

The Illinois Mortgage Foreclosure Law speaks in terms of creating, not invalidating, a lien: "from the time a mortgage is recorded it shall be a lien upon the real estate that is the subject of the mortgage for all monies advanced or applied or other obligations secured in accordance with the terms

---

[6] Certain of the bank's rights, including the right to enforce the debt as a personal liability of the Debtors, were modified by the automatic stay and the discharge. 11 U.S.C. §§ 362(a), 524(a).

[7] At issue in *Neese* was not an unrecorded mortgage, but rather an unrecorded collateral assignment of an interest in a real estate installment contract. Such a contract and such an assignment can be treated as a "mortgage" under the Illinois Mortgage Foreclosure Law. 735 ILL. COMP. STAT. § 5/15-1207.

of the mortgage or as authorized by law." 735 ILL. COMP. STAT. 5/15-1301. Thus, even if *Neese* can be said to conclude that an unrecorded mortgage does not create a lien under the Illinois Mortgage Foreclosure Law or constitute a "lien" as used in that statute,[8] such holding does not mean that a lien cannot arise under another statute or for other purposes. Indeed, the court in *Neese* emphasizes that the Illinois Mortgage Foreclosure Law recognizes that "[g]eneral principles of law and equity, such as those relating to capacity to contract, principal and agent, marshalling of assets, priority, subrogation, estoppel, fraud, misrepresentations, duress, collusion, mistake, bankruptcy or other validating or invalidating cause, supplement this Article unless displaced by a particular provision of it." *Neese*, 665 N.E.2d at 538 (citing 735 ILL. COMP. STAT. 5/15-1106(e)).

Where as here statutory interpretation is a question of state law, "our role is to predict how the Illinois Supreme Court would decide the question." *In re Crane*, 742 F.3d 702, 707-08 (7th Cir. 2013). As noted above the Illinois Supreme Court has held on numerous occasions that unrecorded mortgages are valid as between the parties and as to creditors and subsequent purchasers with notice. *See, e.g., Harms v. Sprague*, 105 Ill. 2d 215, 224-25 (Ill. 1984); *Hass v. Sternbach*, 41 N.E. 51, 54 (Ill. 1894). It is true that neither *Harms* nor *Hass* specifically interpret the language in the Illinois Mortgage Foreclosure Law discussed in *Neese*. However, a recent decision of the Illinois appellate court construing 735 ILL. COMP. STAT. 5/15-1301 emphasized the "important caveat[]" that because "the very purpose of recording a mortgage is to give constructive notice to third parties and to protect them from unrecorded prior encumbrances ... where any party has actual or constructive notice of a prior lien, it will ordinarily take subject to that lien." *Barry v. Division II, LLC*, 2013 IL App (1st) 121944-U (Ill. App. Ct. 2013) (citing *Skidmore, Owings & Merrill v. Pathway Fin.*, 173 Ill. App. 3d 512, 514 (Ill. App.

---

[8] The Mortgage Foreclosure Law uses a separate term "nonrecord claimant" to include a person who has an interest in mortgaged real estate that has not been recorded. 735 ILL. COMP. STAT. 5/15-1210. While such nonrecord claimants have more limited rights under the Illinois Mortgage Foreclosure Law than mortgagees of record, they have the right to intervene and assert their rights in the foreclosure proceeding. 735 ILL. COMP. STAT. 5/15-1501(e).

Ct. 1988)). *See also, Aames Capital Corp. v. Interstate Bank of Oak Forest*, 734 N.E.2d 493, 497 (Ill. App. Ct. 2000) ("However, where a party has constructive notice of a prior interest in real estate, the failure to record is not necessarily fatal to the rights of the prior interest holder."). Thus we must predict that if now presented with the issue the Illinois Supreme Court would affirm its prior rulings and statements that an unrecorded mortgage is effective to create a lien against creditors and subsequent purchasers with notice.

### B. CitiMortgage's Lien Was Not Terminated by the Discharge or by the Plan

A discharge in bankruptcy does not terminate a valid lien. *Long v. Bullard*, 117 U.S. 617 (1886). Instead, a "bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem.*" *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) (finding that the *in rem* rights of a creditor whose debt had been discharged in a prior Chapter 7 proceeding constitute a "claim" that is subject to inclusion in a Chapter 13 plan). The rule of *Long v. Bullard* is codified in Section 524(a) of the Bankruptcy Code, whereby the discharge voids judgments but only to the extent they are "a determination of the personal liability of the debtor with respect to" a dischargeable debt. 11 U.S.C. § 524(a)(1); *Johnson v. Home State Bank*, 501 U.S. at 83 ("Codifying the rule of *Long v. Bullard* ... the Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy."). Similarly, the discharge operates as an injunction against efforts to collect a dischargeable debt but only "as a personal liability of the debtor." 11 U.S.C. § 524(a)(2).

Nor does Section 522(c) of the Bankruptcy Code, which protects a debtor's interest in exempt property, usually affect a valid lien. Subject to certain limited exceptions, including dismissal of the case, Section 522(c) provides that property exempted under the Bankruptcy Code "is not liable during or after the case" for any pre-petition debt. 11 U.S.C. § 522(c). However, this protection does not apply

to "a debt secured by a lien" unless the lien has been avoided under Sections 522(f), 522(g), 544, 545, 547, 548, 549 or 724(a), is void under Section 506(d) or is a tax lien for which notice has not been properly filed. 11 U.S.C. § 522(c)(2). There can be no dispute that CitiMortgage's unperfected mortgage lien was never avoided under Sections 522(f) or (g), or under Sections 544, 545, 547, 548, 549 or 724(a). To do so would have required a motion or adversary proceeding. *See* Fed. R. Bankr. P. 4003(d), 7001(1), (2); *In re Waldvogel*, 125 B.R. 13, 14 n.1 (Bankr. E.D. Wisc. 1991) (noting that assertion of strong-arm powers under Section 544 should have been by adversary rather than as objection to claim, but finding that all parties had consented); *Rivera v. Deutsche Bank Nat'l Trust Co. (In re Rivera)*, 2014 WL 6675693 (9th Cir. B.A.P. 2014) (other than motions under Section 522(f) "all other bankruptcy court actions challenging a creditor's secured status must be brought as an adversary proceeding.") (citing *Bear v. Coben (In re Golden Plan of Cal., Inc.)*, 829 F.2d 705, 711–12 (9th Cir. 1986)). Nor does any party contend that the mortgage lien is a tax lien. Section 506(d) provides that a lien that secures a claim against the debtor that is not "an allowed secured claim" is void, but not if the claim is not allowed due only to the failure of an entity to file a timely proof of claim. 11 U.S.C. § 506(d).[9] Here, CitiMortgage never filed a proof of claim and the Debtors have not sought to disallow CitiMortgage's claim for any other reason than that it failed to file a proof of claim.

Neither did the vesting provisions of the Bankruptcy Code terminate CitiMortgage's lien. The clear language of the plan and confirmation order make it clear that those provisions are not applicable here. Section 1327 of the Bankruptcy Code provides that except "as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the

---

[9] The Supreme Court has held that a lien is not void under Section 506(d) solely because the claim is deemed unsecured by operation of 11 U.S.C. § 506(a). *Bank of America, N.A. v. Caulkett*, 135 S. Ct. 1995, 2000-2001 (2015). Nor have the Debtors contended that CitiMortgage's claim was unsecured based on value. To the contrary, the Debtors scheduled their interest in the residence as worth $108,310.00 and encumbered by other security interests of only $33,635.00. Instead, the Debtors only attack CitiMortgage's mortgage lien on the basis that it was not properly perfected—a theory that would have required avoidance under Section 544.

debtor" and except as otherwise provided in the plan or confirmation order such vesting "is free and clear of any claim or interest of any creditor provided for by the plan." 11 U.S.C. § 1327. In addressing the substantially similar language in Section 1141(c), the Seventh Circuit has held that, at least "for secured creditors who file claims for which provision is made in the plan of reorganization" and unless the plan expressly preserves their liens, such creditors' liens are extinguished upon confirmation of the plan by the vesting of the property in the debtor free and clear of their interests. *In re Penrod*, 50 F.3d 459, 462-63 (7th Cir. 1995). *But see In re Brisco*, 502 B.R. 212, 217-19 (Bankr. N.D. Ill. 2013) (suggesting that Section 1141(c)'s use of the term "property dealt with by the plan" requires a different standard of creditor participation than Section 1327(c)'s claim or interest "provided for by the plan"). But here the confirmation order expressly provides that all property of the estate "will continue to be property of the estate following confirmation" unless the plan provides for surrender of the property or it is sold pursuant to the plan or court order. It is undisputed that the property at issue here was not surrendered or sold pursuant to the plan. Accordingly, Section 1327's provision for vesting free and clear does not apply.

Instead, the Debtors argue that Paragraph B.3 of their confirmed plan had the effect of terminating CitiMortgage's lien. Paragraph B.3, which is a standard provision in the Model Chapter 13 Plan, states:

> The holder of any claim secured by a lien on property of the estate, other than a mortgage treated in Section C or in Paragraph 2 of Section E, shall retain the lien until the earlier of (a) payment of the underlying debt determined under nonbankruptcy law, or (b) discharge under 11 U.S.C. § 1328, <u>at which time the lien shall terminate and be released by the creditor.</u>

(Debtors' Ex. 2, Plan ¶ B.3, ECF No. 34 (emphasis added).)

In interpreting plans of reorganization in the context of Chapter 11 cases, the Seventh Circuit has stated that "[p]rinciples of contract law apply to interpreting a plan of reorganization." *In re*

*Airadigm Communications, Inc.*, 616 F.3d 642, 664 (7th Cir. 2010). This is because in Chapter 11 a "confirmed plan of reorganization is in effect a contract between the parties and the terms of the plan describe their rights and obligations." *Id. See also Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 755 (7th Cir. 2002). But it is far from clear that a Chapter 13 plan is as analogous to a contract as is a Chapter 11 plan. Unlike in Chapter 11, creditors in Chapter 13 are not entitled to vote on a plan. *See* 11 U.S.C. § 1126. Also, in Chapter 13 only the debtor may file a plan. 11 U.S.C. § 1321. Therefore, other than the right to object on certain specified bases in the Bankruptcy Code, a Chapter 13 plan is a rather one-sided affair. In contrast, creditors may file a plan of reorganization in Chapter 11 after a certain period elapses. Nor is it clear that a debtor's subjective intent is particularly relevant to the interpretation of a standard provision of a model plan adopted by the judges of this court. *See* LR 3015-1. *See also In re Wilson*, 321 B.R. 222, 225 (Bankr. N.D. Ill. 2005) (noting that the model plan's "language was crafted with input from both creditor and debtor attorneys practicing in Chapter 13 cases in this district"). Thus, the mere fact that the Debtor believed that Section B.3 of the plan would terminate CitiMortgage's lien and intended it to do so does not make it so. In any event, even under basic contract principles, intent means not merely subjective intent of the contracting parties, but rather "the scope and purpose of the document as manifest by the language used." *Airadigm*, 616 F.3d at 664. Courts "will not bend the language of a contract to create an ambiguity when none exists, but neither will we follow a literal interpretation when [to do so] would lead to an unreasonable or absurd result." *Id.* at 664 (quoting *Chi. Bd. of Options Exch. V. Conn. Gen. Life Ins. Co.*, 713 F.2d 254, 258 (7th Cir. 1983)).

The Turners argue that Paragraph B.3 of this confirmed plan is intended to terminate all liens on all property of the estate upon discharge other than mortgages specifically mentioned and treated in Section C or Paragraph E.2, whether the creditors' claims are mentioned or provided for in the plan or not and whether there is legitimate authority to terminate those liens or not. However, when taken

in the context of the other provisions and the structure of the model plan, it is clear that Paragraph

B.3 is not intended to terminate liens securing claims not provided for in the plan. Instead, the

provision works in concert with Paragraph B.3.2 of the Plan to strip off secured claims that are fully

undersecured and in concert with Paragraph B.3.1 in adjudicating the amount and interest due on

allowed claims secured by property of the estate.

An allowed claim of a creditor that is secured by a lien on property of the estate "is a secured

claim to the extent of the value of such creditor's interest in the estate's interest" in the property and

"is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount

of such allowed claim." 11 U.S.C. § 506(a).   With the exception of claims "secured only by a security

interest in real property that is the debtor's principal residence," a Chapter 13 plan may either "modify

the rights of holders of secured claims ... or leave unaffected the rights of holders of any class of claims."

11 U.S.C. § 1322(b)(2).[10]   The modification of such rights is subject to other restrictions in the

Bankruptcy Code, such as the confirmation requirements in Section 1325(a).   Section 1325(a)(5)

protects an "allowed secured claim" (as bifurcated by operation of Section 506(a)) by, among other

things, requiring that, unless the collateral is surrendered to the creditor or the creditor consents to

different treatment, the plan must provide that (i) the holder of such claim retain its lien until the

earlier of discharge or payment of the underlying debt in full and (ii) the value, as of the effective date

of the plan, of property to be distributed under the plan on account of such claim is not less than the

allowed amount of such claim. 11 U.S.C. § 1325(a)(5).[11]

---

[10] Section 1322(c)(2) provides an exception to the primary residence exception where such home mortgage loan is to become due before the term of the plan, permitting a plan to "provide for payment of [such claims] as modified pursuant to section 1325(a)(5)." 11 U.S.C. § 1322(c)(2).

[11] Section 1325(a)(5) also requires equal monthly payments if payment is to be made periodically, preserves the creditor's lien if the case is dismissed or converted before plan completion, and requires adequate protection for claims secured by personal property. 11 U.S.C. § 1325(a)(5).  These and the temporal protection that the lien securing such allowed secured claim may not be terminated pursuant to Section 1325(a)(5) and 1322(b)(2) prior to either discharge or the payment in full of the underlying debt were added in the 2005 amendments to the Bankruptcy Code.

Sections 1322(b)(2) and Section 1325(a)(5) together permit a Chapter 13 plan to terminate a security interest upon discharge so long as the creditor receives at least as much as the value of the collateral securing that interest with interest at an appropriate rate through the plan.[12] But that is not the case for a secured claim secured only by a security interest in the debtor's primary residence unless the residence has no value or is fully encumbered by liens with higher priority. The Supreme Court in *Nobelman v. Am. Sav. Bank*, held that because the exception in Section 1322(b)(2) protects all "rights of holders of secured claims" secured by a primary residence, if a creditor's claim is even partially secured by the debtor's primary residence (after application of Section 506(a)) then none of that creditor's rights may be modified under Section 1322(b)(2). 508 U.S. 324, 332 (1993). A plan can "provide for the curing of any default [with respect to such claim] within a reasonable time and maintenance of payments while the case is pending" if the last payment on such claim is due after the term of the plan. 11 U.S.C. § 1322(b)(5). However, any claim which is cured and maintained in such manner is not subject to a Chapter 13 discharge. 11 U.S.C. § 1328(a)(1), (c)(1). Nor does Section 1322(b)(5) permit modification of any other rights of such creditor, including its lien.

The Model Chapter 13 Plan implements the debtor's power through a plan to terminate liens not supported by any equity in collateral and to cure, maintain and reinstate long term mortgage loans. CHAPTER 13 MODEL PLAN ¶¶ B.2, B.3, C, E.2, E.3.1, E.3.2, E.5 (2013), http://www.ilnb.uscourts.gov/forms/chapter-13-model-plan-non-calculating. A debtor may cure a pre-petition arrearage for a long-term mortgage claim though monthly plan payments disbursed by the trustee in Paragraph E.5, making current payments either through monthly plan payments to the trustee in Paragraph E.2 or

---

[12] Section 1325(b) provides certain additional protection and required treatment for the allowed bifurcated unsecured deficiency claim of such creditors. 11 U.S.C. § 1325(b)(2).

through direct payments in Section C.[13]  Paragraph B.2 provides for the reinstatement of loans cured in accordance with Paragraph E.5.  In Paragraph E.3.2, the debtor may specifically list claims that "are secured by collateral that either has no value or that is fully encumbered by liens with higher priority," and which are therefore to be "treated as unsecured."[14]  The only other standard section in the model plan in which the debtor may provide for secured claims is Paragraph E.3.1.  That paragraph states that except for mortgage claims to be cured and maintained through Paragraphs C or E.2 and claims to be treated as unsecured through Paragraph E.3.2, "[a]ll secured claims … are to be paid in full during the plan term" with interest at the rates specified and in the fixed monthly amounts specified in the spaces provided "regardless of contrary proofs of claim."

Paragraph B.3 of the plan provision at issue in this case effectuates the treatment of secured claims provided for and specifically listed in Paragraphs E.3.1 and E.3.2 and, if applicable, in special terms provided in Paragraph G.  If not for the termination of liens at discharge under Paragraph B.3, then claims listed in Paragraph E.3.2 would be treated as unsecured only during the term of the plan and any remaining unpaid amount after completion of the plan would effectively become secured again despite the discharge.  The same would be true with respect to Paragraph E.3.1.  If the debtor proposed repayment of a secured claim only at a lower "cramdown interest rate" rather than at the contract rate, *see Till v. SCS Credit Corp.*, 541 U.S. 465, 477 (2004), then without Paragraph B.3, the difference in total indebtedness could remain as a secured claim against the property post-discharge.

---

[13] While Section 1322(b)(5) makes no distinction between long-term mortgage debts and other long-term debts, including unsecured debts, a debtor can use the "special terms" section in Section G of the Model Chapter 13 Plan to provide for treatment permitted by the Bankruptcy Code but which is contrary to the terms of the model plan.
[14] The Chapter 13 Model Plan does not include standard provisions for the bifurcation and partial stripping of liens securing claims greater than the value of the related collateral.  Again, however, a debtor is able to use the "special terms" section in Section G to partially strip such liens (other than long-term mortgage liens secured only by a security interest in the debtor's principal residence or liens for which the bifurcation provisions do not apply).

A 2004 bankruptcy decision involving the pre-BAPCPA iteration of the Chapter 13 model plan,

*In re Swanson*, is instructive regarding the intent and purpose for Paragraph B.3. 312 B.R. 153 (Bankr.

N.D. Ill. 2004). Prior to the 2005 BAPCPA amendments, Paragraph B.3 of the model plan provided:

> The holder of any claim secured by property of the estate, other than a mortgage treated
> in Section C or in Paragraph 3 of Section E, shall retain the lien until receipt of all
> payments provided for by this plan on account of the portion of the claim that is a secured
> claim under 11 U.S.C. § 506(a), at which time the lien shall terminate and be released by
> the creditor.

*Id.* at 160. This provision coincided with Bankruptcy Code Section 1325(a)(5)(B) as then written, which

provided that unless the secured creditor consented to different treatment or the debtor surrendered

the creditor's collateral, for each allowed secured claim provided for by the plan "(i) the plan provides

that the holder of such claim retain the lien securing such claim; and (ii) the value, as of the effective

date of the plan, of property to be distributed under the plan on account of such claim is not less than

the allowed amount of such claim." 11 U.S.C.A. § 1325(a)(5) (West 2004).

On facts close to those presented here, the court in *Swanson* found that Paragraph B.3 of the

model plan did not terminate the lien of a creditor <u>who was not referenced or listed anywhere in the</u>

<u>confirmed plan</u>. 312 B.R. 153 (Bankr. N.D. Ill. 2004). In *Swanson*, a plan which did not reference the

Internal Revenue Service was confirmed prior to the bar date for governmental claims. The IRS

subsequently filed a timely proof of claim asserting a secured claim of $22,922.20 secured by a federal

tax lien. The Chapter 13 trustee objected to the IRS's claim, asserting that because the IRS was not

listed in the confirmed plan, its secured claim was valued at $0 and its lien was terminated by operation

of Paragraph B.3 of the confirmed plan.[15] The court disagreed, noting by analogy the Seventh Circuit's

holding in *Penrod* that confirmation of a Chapter 11 plan terminates a lien under Section 1141(c) only

---

[15] The Chapter 13 trustee in *Swanson* argued that the lien was immediately terminated because the model plan at
that time provided for termination upon payment of the secured portion of the claim pursuant to Section 506(a). The
trustee argued that the omission of the IRS was in essence a valuation of its secured claim as $0, and that its lien
therefore terminated upon the payment of $0. 312 B.R. at 160.

where the holder of a lien participates in the reorganization. 312 B.R. at 161 (citing *In re Penrod*, 50 F.3d 459, 463 (7th Cir. 1995)). From this, the court concluded that the "Plan's silence cannot be interpreted to determine the value of the IRS's security interest or to extinguish its lien." 312 B.R. at 161. Debtors reliance on *In re Malec*, 442 B.R. 130 (Bankr. N.D. Ill. 2011), another case involving a pre-2005 plan, is misplaced. Unlike the present case, the *Malec* plan expressly named and specifically provided for payments to a partially secured creditor. *Id.* at 132, 137. Nowhere in that discussion does the court find that Paragraph B.3 of the model plan is intended to terminate the liens of the holders of secured claims that are <u>not</u> specifically provided for in the plan.

Nor is the result different under the current Model Chapter 13 Plan than it was under the pre-BAPCPA version. The changes in Paragraph B.3 were made to incorporate changes made by BAPCPA to Section 1325(a)(5) of the Bankruptcy Code, and those amendments were intended to increase the protection of secured creditors' lien rights, not diminish them. The current version of Paragraph B.3 tracks the changes made to Section 1325(a)(5) by BAPCPA to add the temporal requirement that the lien be retained until the earlier of discharge or payment of the full underlying debt. *See, e.g., In re Erdmann*, 446 B.R. 861, 867 (Bankr. N.D. Ill. 2011) (Paragraph B.3 of the Model Chapter 13 Plan "simply puts the requirements of section 1325(a)(5) into every plan" unless amended "through the use of special terms in Section G."). As the bankruptcy court explained in *In re Lilly*, "[t]he new language added by BAPCPA clarifies that the plan must permit the lien to be retained until the earlier of payment of the debt determined under nonbankruptcy law or a discharge under Section 1328" and "overrules the results of those prior cases that permitted elimination of the creditor's lien upon payment of the allowed secured claim." 378 B.R. 232, 235 (Bankr. C.D. Ill. 2007). This Court, therefore, agrees with the conclusion in *Swanson* that Paragraph B.3 of the Model Chapter 13 Plan cannot reasonably be interpreted to mean that liens securing claims which are not expressly referenced elsewhere in the plan are terminated upon discharge.

The Debtors' interpretation of Paragraph B.3 of the model plan is also inconsistent with statements made by the Seventh Circuit in its recent Chapter 13 decision, *In re Pajian*, 785 F.3d 1161 (7th Cir. 2015). In *Pajian*, the court ruled that a secured creditor "must file a proof of claim in order to participate in Chapter 13 plan distributions." 785 F.3d at 1163. The court, however, noted that this result would not be unduly harsh because "a secured creditor who fails to do so can still enforce its lien through a foreclosure action, even after the debtor receives a discharge." *Id.* The court also found support for this conclusion in a proposed amendment to the Bankruptcy Rules that would "make[] explicit that a secured creditor's failure to file a proof of claim does not void the creditor's lien." 785 F.3d at 1165. But under the Debtor's interpretation of Paragraph B.3 of the model plan, the opposite would be true. Under *Pajian* the claim of a secured creditor who fails to file a timely proof of claim cannot properly be provided for in the plan. But, if Paragraph B.3 has the effect of terminating the liens of all secured claims not provided for in the plan, as the Debtors now argue, then failure to file a timely proof of claim would have the *de facto* result of terminating such creditors lien under the model plan. This argument also appears to be inconsistent with Section 506(d)(2), which states that a lien is not void solely because of the failure to file a timely proof of claim. 11 U.S.C. § 506(d)(2). Such being the case, this Court is not persuaded that Paragraph B.3 of the Model Chapter 13 Plan is intended to terminate liens securing claims not expressly provided for or dealt with elsewhere in the plan.[16]

Thus, the Court must conclude that the Debtor's confirmed plan did not terminate CitiMortgage's mortgage lien on the McHenry, Illinois property. Therefore, the steps taken by CitiMortgage solely to enforce that lien did not violate the Debtors' discharge. 11 U.S.C. § 524(a)(2).

---

[16] The Court therefore need not address today the effect of a plan which expressly avoids an unperfected mortgage lien without use of an adversary proceeding. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269 (2010) (order confirming Chapter 13 plan providing for discharge of unsecured student loan of creditor who had filed proof of claim, received partial payment through plan and had actual knowledge of plan prior to confirmation was not void merely because the debtor had not commenced an adversary proceeding as required by Bankruptcy Rule 7001).

C. <u>Other Matters</u>

In the argument and hearing on the motion, the parties addressed exclusively whether the recording of the mortgage in McHenry County and commencement of the foreclosure action in 22nd Judicial Circuit seeking to foreclose the mortgage violated the confirmation order and discharge injunction. (Motion ¶ 8, ECF No. 77.)  For the reasons discussed above, the actions *in rem* taken by CitiMortgage do not.  However, the parties have to date not shown whether or not the conduct at issue was limited to the lien interests of CitiMortgage.  The Debtors attached as Exhibit 8 to their original motion the Complaint to Foreclose Mortgage and other Relief filed by CitiMortgage in 2014.  This complaint consists of five counts, four of which include the Debtors as parties.  Count III, seeking damages for unjust enrichment, is directed solely at a non-debtor, Harry Semrow.  The several of the counts appear by their terms to be limited to relief *in rem*, requesting as they do judgment of foreclosure and sale, damages and the imposition of an equitable lien or other equitable relief, all again "*in rem.*"  However, Counts III and IV may be read to include in their respective prayers for relief requests for the award of the "costs incurred herein" by the plaintiff for its request for the imposition of an equitable lien (Count II) and "its costs and fees, including attorneys fees" in connection with its alternative count for an equitable mortgage (Count IV), possibly without limitation.  The record is otherwise barren as to whether these allegations involve an intentional, willful attempt to circumvent the discharge injunction or not and whether the determinations and rulings this Court has made based on the record presented fully disposes of all claims regarding the state court proceedings.  Accordingly, the parties will be granted leave to address solely that issue before the Court considers this motion to be fully adjudicated.

## CONCLUSION

For the foregoing reasons, the Debtors' Motion for Rule to Show Cause Against CitiMortgage for Violation of 11 U.S.C. § 524 and for Other Relief is DENIED as to all issues except whether the requests for relief in Counts II and IV of the respondent's state court complaint seeking costs or fees incurred involve intentional, willful acts in violation of the discharge injunction entered in this bankruptcy case. The parties will be permitted to supplement the record and their argument before the Court separately rules on the remaining issue. A separate order will be entered consistent with this Memorandum Opinion.

Dated: September 16, 2016

ENTER:

Thomas M. Lynch
United States Bankruptcy Judge